CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JAN 27 2011

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CHERYL HAVEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 6:10cv003 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States Magistrate Judge |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Cheryl Haven ("Haven") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits and supplemental security income benefits under the Social Security Act (the "Act"). Haven seeks an award of disability benefits principally due to back and neck problems, glaucoma, left-eye blindness, optic neuritis, and multiple sclerosis ("MS"). Haven alleges that she has been totally disabled since October 25, 2002. In his decision, the Administrative Law Judge ("ALJ") concluded that Haven was not disabled from October 25, 2002, through April 23, 2009, the date of his decision. (Administrative Record "R." at 14.) In finding that Haven was not disabled, the ALJ determined Haven had a "severe" impairment under Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984) (R. 213), but she had a residual functional capacity ("RFC") to perform her past relevant work as a telemarketer or alternative work. (R. 220.) Haven, who is proceeding pro se, argues that the evidence shows she is disabled and that the ALJ's decision is not based on substantial evidence. Review of the administrative record revels that there is no credible evidence to suggest that Haven is disabled from all forms of substantial gainful activity and that

the Commissioner's decision is supported by substantial evidence. As such, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-62 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the RFC,[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 404.1529(a).

3

At the time of the hearing before the ALJ on October 31, 2007, Haven was 49 years old. She completed high school and has a two-year college degree in business and interior design. She has worked as a school bus driver. Most recently, she worked as a telemarketer from August 2000 until she was laid off in October 2002. Haven applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on July 21, 2005. (R. 634.) Her application for benefits was rejected by the Commissioner initially on October 10, 2005, and again on January 26, 2006. In determining whether Haven was disabled under the Act, the ALJ determined that the combined effects of Haven's impairments were severe (R. 214), but she had a RFC to perform her past relevant work as a telemarketer or alternative work. (R. 220.) Thus, the ALJ found that Haven was not disabled.

Haven sought review by the Appeals Council, which remanded the case to the ALJ for further consideration. (R. 205-206.) The ALJ held another hearing on November 6, 2008. The ALJ again determined that Haven was not disabled under the Act on April 23, 2009. Haven again sought review by the Appeals Council, which denied her request for review. (R. 5-7.) She filed this appeal in federal court on January 14, 2010. On June 21, 2010, Haven, who is proceeding pro se, filed a brief, written by her brother, Gregory Walker, that the Court will construe as a motion for summary judgment. The Commissioner filed a motion for summary judgment supported by a memorandum on July 21, 2010. The Clerk of Court issued a Roseboro notice on November 5, 2010, and Haven filed a memorandum in opposition to the Commissioner's motion for summary judgment on January 12, 2011.

### III.

The only issue on appeal is whether the ALJ's decision is supported by substantial evidence. Review of the evidence in the administrative record reveals that substantial evidence

supports the ALJ's decision, and Haven has not met the burden of establishing that she was totally disabled.

A. Back and Neck Pain

Haven has claimed neck and back pain since 1977. The record shows she was treated by a chiropractor regularly from November 2002 to February 2003. (R. 395-409). Most recently she began treatment for back pain on August 22, 2005, after falling on a wet bathroom floor. She received regular chiropractic treatments from August 2005 through January 2007, and the treating chiropractor reported that she had a decreased lumbar and cervical range of motion. (R. 213, 589-95.) Her neck and back problems have been treated by chiropractic, but not by any other means. (R. 213.) Her back and neck problems have always been treated conservatively, and no doctors or chiropractors have recommended surgery. (R. 24.) Nor has she seen a doctor for pain management or taken prescription medication for her back pain. From 2005 to 2007, treating chiropractors noted that Haven was progressing more slowly than expected, but her pain was improving. (R. 518.)

Haven visited a neurologist on August 29, 2006, for facial pain and other issues, and she asked the neurologist to evaluate her back pain. (R. 523.) The neurologist, Dr. Solenski, examined her and found nothing that indicated her back problems needed further examination using imaging. Dr. Solenski recommended weight loss and physical therapy. There is no record that Haven ever lost weight or visited a physical therapist after this recommendation. Haven is 5'6" and weighs about 350 pounds. (R. 20.) Haven's range of motion was evaluated at Light Chiropractic on November 27, 2006. The chiropractor evaluated her range of motion as "fair" or "good" in each muscle group, even though it was decreased. (R. 520.) Haven continued to be treated by chiropractors throughout 2006 and into the early part of 2007. On most of the records

made by the chiropractors, they noted that she complained of neck and back pain but that it was "about the same" as the prior visit. The treating chiropractors did not note that her symptoms had become any worse, and her last chiropractic visit was on March 23, 2007. (R. 580-595.) Haven was evaluated by Dr. Thomas Dobyns, M.D. on October 23, 2004, and X-rays were taken of her back, which showed minimal degenerative change consistent with Haven's age. (R. 213.) Haven was evaluated by another neurologist, Dr. W. Miles Wallace, and electrodiagnostic studies revealed strength, tone, and reflexes were normal in both upper and lower extremities. (R. 214.)

### B. Vision Problems

Haven has glaucoma and optic neuritis. (R. 423.) Her left eye is blind, but the vision in her right eye has consistently been normal ("20/25" or better). (R. 213, 423.) Haven's glaucoma is treated with eye drops. (R. 424.) When Dr. Dobyns evaluated Haven, he noted that she had some mild depth perception problems, so fine work with her hands may be a problem. He opined, however, that she should be able to perform gross work and see well enough to drive despite these mild problems. (R. 433.)

### C. Depression

Haven has been prescribed medication for depression by her family doctor, but she has never been treated by a mental health professional or hospitalized for depression. Haven does not claim that depression interferes with her daily activities and did not list depression on her Disability Report when asked to list all conditions that limit her ability to work. (R. 17.) On her function report, she did not check the boxes indicating that she had problems with memory, completing tasks, concentrating, understanding, following instructions, or getting along with

others. (R. 17.) The medical expert who reviewed Haven's medical records and the testimony at the hearing concluded that Haven's depression is not a severe impairment. (R. 17.)

### D. Facial Pain from Trigeminal Neuralgia

Haven was first treated for pain on the left side of her face in 2006. She had been experiencing occasional episodes of pain since her grandson accidentally kicked her on the left side of the face underneath the eye three years earlier. (R. 527.) The episodes usually last for several seconds and often occur daily. Haven was examined by a neurologist, Dr. Joel Trugman, after being referred by her family doctor. Dr. Trugman noted that Haven had been taking Gabapentin for her facial pain. It had significantly reduced her pain and the frequency of the painful episodes. After treatment, she rated her pain during these episodes as only a "2" on a scale of 1-10. (R. 527.) Dr. Trugman diagnosed neuralgia, recommended continued Gabapentin, and referred Haven to an ear, nose, and throat specialist. On July 17, 2006, Haven was examined by Dr. Caughey, an ear, nose, and throat specialist. Dr. Caughey noted that Haven responded well to Nuerontin and recommended for her to continue taking it. (R. 525.) He advised her to follow up as needed.

On August 29, 2006, Haven followed up at the neurology clinic and reported she had not experienced any facial pain since May and stated she believed the facial pain might be resolved. (R. 522.) She expressed a desire to discontinue taking Neurontin due to its side effects. On May 4, 2007, Haven sought treatment for her facial pain and reported that it had started again. The neurologist opined that the pain may be due to multiple sclerosis ("MS"), and mentioned that she had signs of MS in the past but could not be diagnosed because she refused to have an MRI. (R. 545.) The neurologist recommended an MRI, and prescribed Lyrica for the facial pain. (R. 545.) There is no record of Haven being treated for facial pain after May 4, 2007, but on June 18,

7

2007, the neurology clinic noted that "[Haven] is finally pain-free" and that the doctor planned to reduce her medications for the facial pain. (R. 540.)

### E. Multiple Sclerosis

On May 22, 2010, Haven was given an MRI that revealed findings suggestive of MS. (R. 542.) On June 6, 2007, a doctor at the neurology clinic diagnosed Haven with MS based on the MRI and the fact that she had a history of optic neuritis both 20 years prior and five years prior (R. 539.) On June 18, 2007, the doctor explained to Haven that her MS had been progressing very slowly for 20 years, and that it would likely continue to progress very slowly because her brain imaging was not severely abnormal. (R. 539.) The doctor recommended Copaxone treatment to prevent future episodes of MS. Throughout the rest of 2007 and 2008, Haven continued to follow up with Dr. Albers, her primary care physician, for MS symptoms and other less severe problems. Haven reported continued MS symptoms, including facial pain, fatigue, and headaches, but there is no record that she altered her MS treatment or returned to a specialist. (R. 549-70.)

### F. Haven's Activities

Haven's physical abilities may be limited, but she participates in many physical activities that suggest she is not disabled from all gainful employment. Haven is able to drive and watch television despite her lack of vision in one eye. (R. 541.) She can wash dishes, prepare meals, and do other light household chores. She can walk up to one-third of a mile comfortably. (R. 430.) She can sit up for up to an hour and stand for five minutes. (R. 430.) Haven uses a checkbook, and meets with friends at church a few times a week. (R. 218-19) Haven even cares for and homeschools her eight-year-old grandson. (R. 541.)

## G. Expert Testimony

Dr. Alexander, a board-certified medical doctor, testified as a medical expert at Haven's disability hearing. He reviewed all of Haven's medical records and testified that her major impairment is MS. (R. 180.) Her complaints about back and neck pain are minimal based on objective evidence, and her complaints about weakness and fatigue are most likely due to morbid obesity. (R. 181.) Dr. Alexander testified that during an eight-hour workday, the objective medical evidence showed Haven could lift/carry 20 pounds occasionally and 10 pounds frequently; could sit for six hours; could stand 15 to 30 minutes consecutively and walk for five to 10 minutes consecutively in an hour. (R. 183-85.) He further testified that her manipulation, reaching, handling, and grasping were not limited. However, she could not work in environments involving hazards, heights, crawling, or squatting. (R. 182.)

Dr. Albers, Haven's primary care physician, wrote letters in which he opined that she was disabled. In these letters, Dr. Albers stated that Haven has been diagnosed with optic neuritis, MS, and glaucoma. He added that she is obese and has problems with weakness and bending. (R. 561.) He stated that Haven has a handicapped parking sticker because her glaucoma is a "debilitating condition" and that he believes Haven has "multiple reasons to be disabled." (R. 561.) Dr. Albers also stated that prior to being prescribed medications, her pain was so severe that she considered suicide. (R. 562.) He opined that there is no way Haven can be gainfully employed. (R. 562.) During the hearing, however, Dr. Alexander stated that Dr. Albers' letters and records were not helpful in evaluating Haven because his records were scant and did not support his opinion in the letters. (R. 183.)

A vocational expert also testified at Haven's hearing. He testified that despite the limitations Haven had, she had the RFC to perform her past relevant sedentary, semi-skilled

9

work as a telemarketer. (R. 194.) The vocational expert also testified that Haven had acquired clerk and communication skills that were transferable to sedentary work as a receptionist and information clerk. (R. 193-95.) He testified that Haven's past relevant work, as well as the alternative work he specified, would accommodate a sit/stand option and a person with depth perception problems. (R. 195.) He also testified that there are over 600,000 positions nationally in those types of employment. (R. 195.)

### H. Substantial Evidence Supports the ALJ's Decision

A review of the record shows that there is substantial evidence to support the ALJ's decision that Haven is not totally disabled under the Act. First, two impartial medical experts determined that Haven's physical capacity is significantly greater than she purports it to be. Dr. Dobyns observed that Haven had no trouble walking around his office and was able to climb onto the exam table with only a little difficulty. (R. 431.) He determined that Haven's range of motion was only slightly decreased, and he opined that "[Haven] probably is capable of doing more than she says she can do." Dr. Alexander, likewise, determined that Haven has a considerable RFC to work. He reviewed the objective medical evidence and found that even with her limitations, Haven can still perform many tasks and is not limited in her ability to perform certain important tasks. See supra section III.G.

Second, the ALJ was justified in relying on the experts' opinions because they are supported by objective medical evidence. The medical records of Haven's own physicians support the experts' evaluation of her RFC. The medical records show that even though Haven's back pain may be severe, it is not disabling. It has only been treated by chiropractic; Haven has never needed treatment by a physician and has never been referred to surgery or pain management by her chiropractors or family doctor. If Haven's back pain were truly debilitating,

one would expect that she would seek more aggressive treatment. Also, her chiropractic treatment records reflect that her conditions were improving, albeit more slowly than she would have preferred. Further, Haven's chiropractic records purport that her range of motion was only somewhat limited, supporting Dr. Alexander's opinion that she can walk, sit, and stand, during the day. Finally, X-rays of Haven's back appeared normal for a person of her age.

Haven's vision records show that she has consistently had near perfect vision in her right eye and no more than minor depth perception problems. Therefore, her vision problems do not preclude her from sedentary, semi-skilled work. Also, Haven's medical records show her depression is not disabling. She has only been prescribed depression medication by her family physician and has never been treated by a mental health professional. She also never reported to her doctor that her depression interfered with daily activities or ability to work.

Haven's medical records reveal that her facial pain has responded well to medication and is not disabling. At one point, Haven's facial pain had been eliminated, and she asked to discontinue her medication. Her records show no treatment for facial pain after May 4, 2007. Haven's medical records show that MS is does not totally disable her. Her neurologist opined that her MS would continue to progress very slowly because the MRI showed that her brain was not severely abnormal, and her MS had progressed very slowly over the previous 20 years. Furthermore, if Haven's MS totally disabled her, one would expect that she would return to the neurologist and seek further treatment, but there is no record of Haven being treated by the neurologist after June 2007.

Third, substantial evidence supports the ALJ's decision not to give deference to Dr. Albers' opinion. The opinion of a treating source is not always entitled to great deference or greater weight. The regulations explain that when an opinion is not given controlling weight, the

ALJ will "apply the factors listed [below]...in determining the weight to give the opinion." Id. Relevant factors are the supportability of the opinion, as determined by the evidence presented by the medical source, and consistency of the opinion with the record as a whole. See 20 C.F.R. § 404.1527(d)(3), (4). For example, contradictory persuasive evidence can discredit a treating physician's opinion. See Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). Finally, a treating physician's opinion is not given any special deference when the opinion relates to the claimant's ability to work or her RFC. See 20 C.F.R. § 404.1527(e)(2) ("Although we consider opinions from medical sources on issues such as. . . your residual functional capacity. . . the final responsibility for deciding these issues is reserved to the Commissioner.").

First, the ALJ's decision not to defer to Dr. Albers was justified because Dr. Albers opined on issues that are reserved for the Commissioner. Dr. Albers does not have the authority to determine whether a claimant is totally disabled under the Act, so his conclusory opinions on this issue cannot be credited.

Second, Dr. Albers' general statements that Haven had been diagnosed with certain impairments are supported by the record but are superfluous. The medical records already prove that Haven has been diagnosed with glaucoma, MS, and optic neuritis, so these statements do nothing to support Havens' claim that she is totally disabled under the Act.

Third, aside from Dr. Albers' general statements of diagnosis and conclusory opinions on disability, there is little substance to his letters, and what remains is contradicted by other persuasive evidence in the record. For example, Dr. Albers stated that Havens' pain was so bad she seriously considered suicide, but medical records show that her pain improved significantly with medication to the point that she thought it was resolved. (R. 540.) Haven's medical records note that she told a doctor she would not consider hurting herself because she has to homeschool

her grandson. (R. 541.) Dr. Albers' letter also states that Haven has problems falling asleep due to facial pain and has additional vision problems when sitting in front of a computer. However, these symptoms are absent from Haven's recent medical records. The record clearly shows that substantial evidence supports that ALJ's decision not to defer to Dr. Albers' brief, conclusory opinion that Haven is disabled.

Finally, the activities in which Haven participates show that she is capable of more than she claims to be and supports the experts' opinion of her RFC. Haven homeschools her grandson, which at a minimum requires hours of work similar to semi-skilled, sedentary work.[2] Additionally, Haven drives and meets with friends at church multiple times per week, does light household chores, and has testified that she can walk one-third of a mile. These activities all require significant mobility, sitting, and standing. The fact that Haven participates in them despite her limitations is commendable, but it belies claims that she cannot sit or stand for any appreciable time period.

Taken as a whole, the record contains sufficient evidence to support the ALJ's decision that Haven was not totally disabled.

## IV.

At the end of the day, it is not the province of the court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence, and, in this case, substantial evidence supports the ALJ's decision. In recommending that the final decision of the Commissioner be affirmed, the undersigned does not suggest that Haven is free from all infirmity. Careful review of the

---

[2] Homeschooling, at a minimum, requires that Haven be able to read and comprehend textbooks and other academic material, present it to her grandson, interact with him, and evaluate his work. This type of activity cannot be significantly dissimilar to semi-skilled sedentary work, which requires similar skills of reading, speaking, and interacting with others.

medical records compels the conclusion that Haven has not met her burden of establishing that she was totally disabled from all forms of substantial gainful employment. The ALJ properly considered all of the subjective and objective factors in adjudicating Haven's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence.

The Clerk is directed to transmit the record in this case to Hon. Norman K. Moon, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 637(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is also directed to send a copy of this Report and Recommendation to all counsel of record for the Commissioner and to plaintiff Haven.

Entered: January 27, 2011.

/s/ Michael F. Urbanski

Michael F. Urbanski
United States Magistrate Judge